```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
UNITED STATES SECURITIES AND EXCHANGE   :
COMMISSION,                             :
                          Plaintiff,    :   09 Civ. 2296 (DLC)
                                        :
              -v-                       :   OPINION & ORDER
                                        :
BRIAN J. KEARNS and BRUCE J. VAN        :
FOSSEN,                                 :
                          Defendants.   :
                                        :
----------------------------------------X
```

Appearances:

For Plaintiff:
John J. Bowers
U.S. Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549-4010

For Defendant Brian J. Kearns:
Edward J. Shapiro
Latham & Watkins LLP
555 Eleventh Street, NW
Washington, DC 20004

Jeff G. Hammel
Latham & Watkins LLP
885 Third Avenue
New York, NY 10022-4834

For Defendant Bruce J. Van Fossen:
Thomas M. Buchanan
Eric P. Gotting
Winston & Strawn LLP
1700 K Street, NW
Washington, DC 20006

Thomas J. Quigley
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193

DENISE COTE, District Judge:

Plaintiff United States Securities and Exchange Commission ("SEC") has brought suit alleging that two individual defendants participated in a fraudulent billing scheme to improve the financial performance of MedQuist, Inc. ("MedQuist"), a medical transcription company based in New Jersey.[1]  Defendants, who live in New Jersey and who worked at MedQuist's New Jersey headquarters, have moved to transfer this action to the United States District Court for the District of New Jersey (Camden Division).  For the following reasons, the motion is granted.

BACKGROUND

As alleged in the SEC's complaint, from 1999 to 2004 MedQuist inflated its bills to customers by increasing the number of lines it claimed to have transcribed.  Knowing that customers were unable to verify line counts on bills, MedQuist secretly manipulated the line counts on bills to achieve specific revenue and margin targets.  MedQuist established internal billing policies regarding this scheme, including internal ratios for manipulating the billing and achieving certain revenue targets.

---

[1] The SEC also filed two related actions as settled cases.  See SEC v. MedQuist, Inc., 09 Civ. 2297 (DLC); SEC v. Donohoe, 09 Civ. 2298 (DLC).

Defendants Kearns and Van Fossen knew of the scheme and took steps to further and conceal it. The defendants misled MedQuist's independent auditors into believing that MedQuist was actually counting the lines as required by customer contracts. Defendants also told the auditors they knew of no allegations of fraud or problems when they knew of, inter alia, customer and employee complaints of overbilling and line count manipulation. The defendants misled shareholders and the public in SEC filings, press releases, and earnings calls by not disclosing the overbilling scheme and by stating that MedQuist's revenues were based upon the contracted rates and increased sales. The SEC states in its brief opposing transfer that upon information and belief, these SEC filings and press releases were received by investors and analysts in New York, and the earning calls often included New York participants. The SEC also notes that some of MedQuist's customers did business in New York. MedQuist's stock was publicly sold on the New York City-based NASDAQ stock exchange.

MedQuist's headquarters are in Mount Laurel, New Jersey, which is approximately 85 miles from New York City and 15 miles from the Camden, New Jersey courthouse where defendants seek to transfer this action. The SEC has a regional office in New York; it also has a regional office in Philadelphia, Pennsylvania that is approximately 2.5 miles from the Camden

courthouse.  Both defendants reside in New Jersey, approximately ten miles from the Camden courthouse.  Defendant Kearns was the Treasurer and Chief Financial Officer of MedQuist from 2000 to 2004, and defendant Van Fossen was Vice President and Controller of MedQuist from 1995 to 2005.  Defendants state that senior management work in MedQuist's Mount Laurel corporate headquarters, and that Van Fossen is still an employee there.  Defendants also note that MedQuist's independent auditors worked out of their Philadelphia offices.

    The Honorable Jerome B. Simandle of the United States District Court for the District of New Jersey (Camden Division) has presided over at least five actions related to MedQuist's billing practices.  Those actions include a settled customer class action, a settled shareholder class action, a settled transcriptionist's class action, and a dismissed derivative action.  These four concluded matters produced over 200 pages of written opinions by Judge Simandle.  The one action still pending before Judge Simandle is a customer action asserting claims of fraud and breach of contract arising out of the billing scheme described in the SEC's complaint in this case.

    Counsel for the SEC in this action are based in Washington, DC.  Counsel for the defendants are based principally in Washington, DC and New York.

DISCUSSION

The standard for a motion to transfer venue pursuant to 28 U.S.C. § 1404(a) is well established.  Section 1404 provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  A district court has broad discretion to grant or deny motions to transfer and makes its determination based on "notions of convenience and fairness on a case-by-case basis."  D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006); see also Azari v. B & H Photo Video, 06 Civ. 7825(DLC), 2007 WL 13101, at *1-2 (S.D.N.Y. Jan. 3, 2007).  The movant bears the burden of establishing that transfer is warranted.  Azari, 2007 WL 13101, at *1.  If the transferee court also has jurisdiction over the case, the court must determine whether, considering the "convenience of parties and witnesses" and the "interest of justice," a transfer is appropriate.  Id.  The factors a court considers in making that determination include

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties.

D.H. Blair, 462 F.3d at 106-07 (citation omitted).  A court may also consider "the forum's familiarity with the governing law," and "trial efficiency and the interest of justice, based on the totality of the circumstances."  Berman v. Informix Corp., 30 F. Supp. 2d 653, 657 (S.D.N.Y. 1998).  Even where there is related litigation in another district, the decision to transfer lies within the broad discretion of the district court and is to be made based upon case-specific notions of convenience and fairness.  SEC v. KPMG, LLP, No. 03 Civ. 671(DLC), 2003 WL 1842871, at *3 (S.D.N.Y. Apr. 3, 2003).

    The SEC's choice of forum is entitled to the level of deference to which a plaintiff's choice of forum is ordinarily entitled.  Id.  Ordinarily, courts are to defer to a plaintiff's choice of forum.  Id.; see also Berman, 30 F. Supp. 2d at 656 (plaintiff's choice of forum should not be disturbed "unless the defendants make a clear and convincing showing that the balance of convenience favors defendants' choice" (citation omitted)).  Where, however, "the operative facts upon which the litigation is brought bear little material connection to the chosen forum, or where the choice of forum otherwise appears to be motivated by forum shopping, the plaintiff's choice will command less deference."  KMPG, 2003 WL 1842871, at *3 (citation omitted) (adopting standard from forum non conveniens precedent).  All parties acknowledge that "where there is no material connection

6

between this district and the operative facts[,] the interests of justice require the transfer of the action." <u>Cohn v. Metropolitan Life Ins., Co.</u>, No. 07 Civ. 0928(HB), 2007 WL 1573874, at *3 (S.D.N.Y. May 31, 2007) (citation omitted).

At the outset, neither party disputes that this case could have been brought in the District of New Jersey; rather, the parties' principal dispute is over what level of deference to accord to the SEC's choice of forum.  In this case, the operative facts occurred in New Jersey, not in New York, and as such, the SEC's choice of forum should be accorded less deference.

The only operative fact mentioned in the SEC's complaint that took place in this district was that MedQuist's shares were traded on the NASDAQ.  That fact alone, however, hardly demonstrates that the operative facts that are central to this complaint took place in this forum.  If trading on a New York-based stock exchange were enough by itself to avoid transfer of venue to other districts, it would be virtually impossible to transfer SEC enforcement actions involving publicly-traded companies to other districts.

In its brief in opposition, the SEC asserts that there are additional connections to this district, claiming that New York-based analysts followed the MedQuist stock prices, that New York-based investors purchased such stock, and that New York-

7

based customers were injured by the scheme.  These alleged connections are either peripheral to the scheme alleged in the complaint, which as alleged was carried out principally in New Jersey, and in which both defendants allegedly participated in New Jersey, or are common to many fora and do not in any way meaningfully distinguish the chosen forum.  For example, while presumably investors in New York bought MedQuist stock, so too presumably did investors in many other states.  Similarly, while the SEC argues that customers in New York were injured by the scheme, MedQuist has customers throughout the country.[2]  Finally, the claims that analysts in New York followed the MedQuist stock, like the claim that the stock was traded on the NASDAQ, could be made in almost every SEC enforcement action involving publicly-traded companies and similarly fails to show a meaningful connection between the chosen forum and the litigation.

Rather than evincing any meaningful connection to this forum, the allegations in the complaint demonstrate that the operative facts on which the complaint is brought took place principally in New Jersey.  New Jersey is where MedQuist is

---

[2] For example, the action currently pending before Judge Simandle was instituted by customers located in California, Maryland, and Colorado, see Kaiser Foundation Health Plan, Inc. v. MedQuist, Inc., Civ. No. 08-4376(JBS), 2009 WL 961426, at *1 (D. N.J. Apr. 8, 2009), and the case was transferred by stipulation to the District of New Jersey from the Northern District of California.  Id. at *3.

8

headquartered, where the fraudulent billing practice was developed and implemented, and where the two defendants worked and allegedly participated in the scheme, for example by misleading the independent auditors and by preparing and reviewing the misleading public filings.  Under these circumstances, the SEC's choice of forum is entitled to less deference.  See Azari, 2007 WL 13101, at *2 (according less deference to choice of forum where, inter alia, "the critical decisions that underlie the plaintiffs' claims were made outside New York" and "[t]he only events that occurred in New York are those activities involving two of the many [defendant company's d]ealers").

The SEC relies heavily on KPMG in opposing transfer, but there are significant differences between the facts presented in KMPG, where the Court found that the SEC's choice of forum was entitled to deference, and the instant situation.  In denying the motion to transfer in KMPG and finding that plaintiff's decision to file in this district was entitled to deference, this Court relied on, inter alia: "that [plaintiff's] choice of forum was dictated by convenience, principally the presence of an SEC office in New York," with New York-based SEC counsel participating in the litigation; the fact "that events important to the claims in the Complaint are described as having occurred in New York"; and that "defendants critical to this lawsuit are

9

and were located in and working from New York." KPMG, 2003 WL 1842871 at *4.  In this case, however, there are no New York-based defendants or important events described in the complaint that took place in New York.  And while the SEC has an office in New York, it also has one in Philadelphia, which is 2.5 miles from the proposed transferee court, and the counsel representing the SEC work from its Washington, D.C. office.  The court in KMPG also relied on the fact that the action in that case was aimed at addressing defendant KPMG's past and future practices, and as such the SEC's decision to bring suit in the district where KMPG was headquartered was entitled to deference.  Id.  In the instant case, however, MedQuist is not headquartered in this district and there is no similarly strong connection between the instant case and this district to warrant similar deference to the SEC's choice of forum in this case.

In addition to the fact that the SEC's choice of forum in this case is entitled to less deference, the balance of factors in the transfer analysis points in favor of granting the transfer motion.  For one, as discussed above, the locus of operative facts favors a transfer in this case.

Several of the other Section 1404 factors can quickly be disposed of as essentially neutral.  Both courts are equally capable of applying the federal securities laws that are implicated by this case.  Neither side has made a sufficient

10

showing that one court will be significantly better-positioned to compel potential witnesses to testify.  And as to the relative means of the parties, neither side has argued that there is a significant disparity of means that would weigh in favor or against a transfer.

As to the convenience of witnesses, senior MedQuist management worked in New Jersey (and presumably reside near the headquarters, which is only 15 miles from the Camden courthouse and is 85 miles from New York City), and the MedQuist auditors worked out of their Philadelphia offices (which is only approximately 2.5 miles from the Camden courthouse).[3]

As for the location of relevant documents, given that the defendants allegedly participated in the scheme in New Jersey and that the auditors performed their work from Philadelphia, this factor favors transfer.  The SEC does not meaningfully dispute this, but only argues that given current technology this factor is not to be given much weight.  See Cohn, 2007 WL 1573874, at *5.  As such, this factor also tips the balance slightly in favor of transfer.

The location of the parties also weighs in favor of a transfer.  The District of New Jersey (Camden Division) is

---

[3] While the SEC notes that some potential witnesses, such as customers, analysts, and investors, may be located in New York, it has not explained how these individuals will have relevant testimony or are likely to have testimony of greater relevance than such witnesses located in New Jersey.

certainly a more convenient forum for defendants, who reside in New Jersey only ten miles away. The SEC argues that this factor is neutral, because while New Jersey may be more convenient for defendants, a transfer will merely shift the inconvenience to the SEC, which has a large regional office in this district. The SEC has not explained, however, how it will suffer inconvenience given that it also has a regional office located 2.5 miles from the Camden courthouse and given that its counsel assigned to this litigation is based out of Washington, D.C.

Finally, efficiency and the interests of justice also favor a transfer in this case. As discussed above, Judge Simandle in the District of New Jersey has overseen at least five actions relating to MedQuist and the general wrongdoing that is basis for the allegations in the complaint. While only one case is still pending, the fact that the transferee court will be familiar with many of the facts and issues can only increase judicial economy. Even though this SEC action cannot be consolidated with other cases not brought by the SEC without the SEC's consent, 15 U.S.C. § 78u(g), Judge Simandle's familiarity with many of the facts and issues in this case, gained from his involvement in the settled and pending cases, distinguishes him from any jurist in this district. While far from dispositive, this factor of efficiency does weigh in favor of a transfer.

See Berg v. First American Bankshares, Inc., 576 F. Supp. 1239, 1243-44 (S.D.N.Y 1983).

On the whole, the location of operative facts, efficiency, and the interests of justice weigh in favor of transfer, while many of the other factors touching upon the convenience of litigating this case also point in favor of transfer or are neutral. On balance, therefore, the defendants have demonstrated that a transfer in this case is appropriate. The SEC is essentially left to argue that this case should stay in this district simply because it was filed here, but as discussed above, that fact is not enough under the circumstances presented here to outweigh the other factors and avoid a transfer.

CONCLUSION

Defendants' May 5, 2009 motion to transfer venue to the District of New Jersey (Camden Division) is granted. The Clerk of Court shall transfer the action and close the case in this district.

SO ORDERED:

Dated:   New York, New York
         July 14, 2009

*Denise Cote*
DENISE COTE
United States District Judge

13